Blue Hills Cemetery, Inc. *v.* Board of Registration in Embalming & Funeral Directing.

Blue Hills Cemetery, Inc. & another[1] *vs.* Board of
Registration in Embalming and Funeral Directing
& others.[2]

Norfolk. September 13, 1979. — December 14, 1979.

Present: Hennessey, C.J., Quirico, Braucher, Kaplan, Wilkins, & Abrams, JJ.

*Constitutional Law,* Equal protection of laws, Police power. *Due Process of Law,* Regulation of economic activity. *Cemetery. Funeral Director.*

General Laws c. 112, § 87, which provides that a corporation may engage in the business of funeral directing only if it engages in no other business, violates neither the due process clause or the equal protection clause of the Fourteenth Amendment to the United States Constitution or similar provisions of the Massachusetts Constitution. [373-376]

Civil action commenced in the Superior Court on February 3, 1975.

The case was heard by *Fine,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Regina Williams Tate (Richard W. Murphy* with her) for the plaintiffs.

*Alan K. Posner,* Assistant Attorney General, for the Commonwealth & another.

*Paul F. Markham,* for the Massachusetts Funeral Directors Association, Inc., intervener *(Daniel G. Harrington,* Special Assistant Attorney General, for the Board of Registration in Embalming and Funeral Directing, with him).

---

[1] The second plaintiff is Gerald Scally.

[2] The other defendants consist of the five individual members of the board in their capacity as such, the Commonwealth, the Attorney General, and (as intervener by leave of the trial judge) the Massachusetts Funeral Directors Association, Inc. The Commonwealth's contention that it must be dismissed as a party since it is immune to suit without its consent, see *Executive Air Serv., Inc.* v. *Division of Fisheries & Game,* 342 Mass. 356, 358 (1961), made but not pressed in the Superior Court, is noted but also not pressed by the Attorney General on appeal. Thus we do not consider his motion to dismiss the Commonwealth as a defendant.

ABRAMS, J. The Legislature has provided that a corporation may engage in the business of funeral directing only if it engages in no other business. G. L. c. 112, § 87.[3] The plaintiffs contend that this restriction violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution as well as Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth and arts. 1 and 10 of its Declaration of Rights.

Blue Hills Cemetery, Inc., is a Massachusetts corporation operating a cemetery in the town of Braintree. Blue Hills wishes to create a funeral directing establishment at its place of business. To this end, Blue Hills retained, as an employee, plaintiff Gerald Scally, a certified funeral director and embalmer, and applied to the Board of Registration in Embalming and Funeral Directing[4] for a funeral directing establishment certificate.

---

[3] General Laws c. 112, § 87, as appearing in St. 1954, c. 653, § 2, provides, in relevant part: "[W]hoever not being registered as a funeral director under section eighty-three and licensed as a funeral director under section forty-nine of chapter one hundred and fourteen shall engage in the business or profession of funeral directing, or shall hold himself out as such, shall, except as otherwise provided by law, be punished by a fine of not more than one hundred dollars or by imprisonment for not more than two months, or both; but this shall not be . . . deemed to prohibit a corporation or partnership, if not engaged in any other business, from engaging in the business of funeral directing, if a duly registered and licensed funeral director is in charge of the business of said corporation or partnership and his name is presented to public view and in all advertising. If such corporation or partnership engages in general advertising for the purpose of advertising funeral services, then all the individuals whose names shall appear on such advertisement shall also be duly registered and licensed funeral directors, and all active members of said corporation or partnership, together with those individuals whose names shall appear, or be used in connection with the name of the corporation or partnership in the regular course of its business in the conduct of funerals and for the purpose of advertising funeral services, shall also be duly registered and licensed funeral directors. No person engaged in embalming or funeral directing or serving as an apprentice shall act or be employed as a caretaker or supervisor at any cemetery."

[4] Established by G. L. c. 13, §§ 29-31, the board is empowered by G. L. c. 112, § 83, to license, through separate certification procedures, embalmers, funeral directors and funeral directing establishments. The board may suspend or revoke certificates, G. L. c. 112, § 84, and may

The board rejected Blue Hills' application, ruling that G. L. c. 112, § 87, prohibits corporations which are conducting any other business from engaging in funeral directing. Since Blue Hills could not obtain an establishment certificate, the board also denied Scally's request for a license to operate as a funeral director from Blue Hills' place of business. The plaintiffs then commenced this action, seeking a declaratory judgment that the "other business" restriction of § 87 violates the State and Federal Constitutions.

In essence, Blue Hills argues that statutory regulations governing funeral directing and embalming serve only two goals, first, preventing disease, and second, assuring that funeral directors and embalmers possess necessary technical skills. Blue Hills acknowledges the validity of these legislative ends, but argues that the "other business" prohibition of § 87 bears no rational relationship to either objective. The statute, therefore, is said to violate the substantive due process guaranties of the State and Federal Constitutions. Similarly, Blue Hills argues that the legislative classification of corporations into those engaged in multiple businesses on the one hand and those engaged solely in funeral directing on the other cannot rationally be said to further either postulated objective, and the statute therefore constitutes an unconstitutional denial of the right to equal protection of the laws. Finally, Scally advances parallel challenges to the statute, on the basis that the board's denial of his license application rests on its finding that § 87 prohibits the issuance of an establishment certificate to Blue Hills.

The judge, in response to cross motions for summary judgment filed by the plaintiffs and the Attorney General, and on the basis of affidavits and a statement of agreed facts,[5]

---

promulgate rules "for . . . the betterment and promotion of the standards of service and practice to be followed in the profession of embalming and funeral directing," and conduct investigations. G. L. c. 112, § 85.

[5] The intervener, the Massachusetts Funeral Directors Association, Inc., did not sign the statement of agreed facts. On appeal, the association advances additional interpretations of § 87 beyond those made by the Attorney General. Since we find the statute constitutional, we do not address the intervener's additional arguments.

declared the statute constitutional. Blue Hills and Scally appealed from this judgment, and we granted their petition for direct appellate review. We affirm.

*Standard of review.* We note at the outset that § 87 represents an archetypical instance of legislative regulation of economic activity. Section 87 "trammels [no] fundamental personal rights"[6] and "is drawn upon [no] inherently suspect distinctions." *Friedman* v. *Rogers*, 440 U.S. 1, 17 (1979), quoting from *New Orleans* v. *Dukes*, 427 U.S. 297, 303 (1976). See *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423, 432-433 (1977). Those who challenge the constitutionality of such legislation "carry a heavy burden in seeking to overcome the statute's presumption of constitutionality." *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 190 (1978).

It follows as a "corollary" of this presumption,[7] *Pinnick* v. *Cleary*, 360 Mass. 1, 14 (1971), that "[u]nless the act of the Legislature cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it, the court has no power to strike it down as violative of the Constitution." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418 (1940). See *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 546 (1974) ("we are not required to blind ourselves to possi-

---

[6] The right to engage in a particular occupation is not a "fundamental right infringement of which deserves strict judicial scrutiny." *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 542 (1974). See *Opinion of the Justices*, 368 Mass. 857, 865 (1975). No claim is made that the classification drawn by the statute, between corporations engaged solely in funeral directing and those engaged in other businesses as well, is inherently suspect. There is no evidence in this case that the provisions of § 87 have a racially disproportionate effect or that the licensing scheme itself derives from a racially discriminatory intent. See, for the effect of licensing schemes on racial minorities, Gellhorn, The Abuse of Occupational Licensing, 44 U. Chi. L. Rev. 6, 18-19 (1976), and Williams, Legal Restrictions on Black Progress, 21 How. L.J. 47, 66-68 (1978).

[7] No such presumption exists when this court considers, in an advisory opinion, proposed legislation not yet enacted by the Legislature. *Opinion of the Justices*, 345 Mass. 780, 781-782 (1963). Plaintiffs' reliance on *Opinion of the Justices*, 322 Mass. 755 (1948), is therefore misplaced.

ble rationales that may have influenced the Legislature"); *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 695 (1971) ("as long as there are possible findings which the Legislature could reasonably have made in the legitimate exercise of the police powers its acts will be upheld"); *Zayre Corp.* v. *Attorney Gen.,* 372 Mass. 423, 432 (1977) (statute may be justified by "any conceivable set of facts or findings").

The deference to legislative judgments implicit in this standard of review does not reflect "an abdication of the judicial role," but rather a "recognition of the . . . undesirability of the judiciary's substituting its notions of correct policy for that of a popularly elected Legislature" where neither the State nor Federal Constitution marks the values at issue as demanding heightened judicial scrutiny. *Zayre Corp.* v. *Attorney Gen., supra* at 433.

It is also clear that the right to engage in any lawful occupation is an aspect of the liberty and property interests protected by the substantive reach of the due process clause of the Fourteenth Amendment to the United States Constitution and analogous provisions of our State Constitution. *McMurdo* v. *Getter,* 298 Mass. 363, 365-366 (1937). We do not denigrate in any way the importance of this right, which has been termed "the most precious liberty that man possesses." *Barsky* v. *Board of Regents of the Univ. of N. Y.,* 347 U.S. 442, 472 (1954) (Douglas, J., dissenting). But the same Constitutions that create the right leave it vulnerable to qualification or restriction by any valid exercise of the Legislature's police power, "the broad power, never precisely delimited, to take rational action for the protection of the public safety, health, morals, comfort and good order." *McMurdo* v. *Getter, supra* at 366.

Our task here is therefore both limited and clear: we must determine whether § 87 represents a valid exercise of the police power. And we must do so by assessing the rationality of the connection between the legislative means adopted in § 87 and those permissible public ends the Legislature may plausibly be said to have been pursuing.

*Due process claims.* The due process clause of the Fourteenth Amendment to the United States Constitution demands that a statute bear a "reasonable relation to a permissible legislative objective." *Pinnick* v. *Cleary,* 360 Mass. 1, 14 (1971). Under the analogous provisions of our State Constitution, we must determine whether § 87 "bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life,* 307 Mass. 408, 418 (1940).[8]

Section 87 exists as part of a comprehensive statutory scheme regulating this State's funeral industry. See generally G. L. c. 112, §§ 82-87; G. L. c. 13, §§ 29-31. As Blue Hills is, of course, aware, the State's concern for the treatment afforded its dead and their families extends beyond the funeral industry; cemeteries are subject to a set of

---

[8] While the State and Federal standards are phrased in virtually identical terms, we have noted that "[t]he Constitution of a State may guard more jealously against the exercise of the State's police power." *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 421 (1965); *Corning Glass Works* v. *Ann & Hope, Inc. of Danvers,* 363 Mass. 409, 416 (1973) ("we are not bound by Federal decisions, which in some respects are less restrictive than our Declaration of Rights"). As a result, we have occasionally been less willing than the Federal courts to ascribe to the Legislature speculative and implausible ends, or to find rational the nexus said to exist between a plausible end and the chosen statutory means. *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health, supra* at 421-426.

Any difference between the two constitutional standards in the area of economic regulation, however, is narrow. See, e.g., our comment regarding the applicability of a distinct State "due process" standard to the alteration of preexisting common law effected by the original "no fault" insurance legislation. "Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, and arts. 1, 10 and 12 of its Declaration of Rights, are the provisions in our Constitution comparable to the due process clause of the Federal Constitution. They raise no distinct issues in dealing with this kind of statute and do not, therefore, warrant separate discussion." *Pinnick* v. *Cleary,* 360 Mass. 1, 14 n.8 (1971). For the reasons set out, *infra,* we have little difficulty in concluding that § 87 sufficiently furthers plausible legislative objectives through the adoption of means sufficiently closely related to the attainment of these ends to satisfy both State and Federal constitutional standards.

similarly thorough regulations. See generally G. L. c. 114, §§ 1-50.

In light of this complex pattern of often minutely detailed regulation the Legislature's possible objectives in enacting § 87 cannot fairly be limited to the prevention of disease and the assurance of certain minimum levels of technical skill. The Legislature was free to pursue the more general but equally valid goal of enhancing the quality of funeral services, which are always rendered and most often contracted for under emotional circumstances. See *State Bd. of Funeral Directors & Embalmers* v. *National Chapels, Inc.*, 249 So.2d 677, 678 (Fla. 1971). "The Legislature possesses a large measure of discretion to determine what the public interests require and what means should be taken to protect those interests." *Merit Oil Co.* v. *Director of the Div. on the Necessaries of Life*, 319 Mass. 301, 304-305 (1946). It was open to the Legislature to conclude that integration of funeral services into the operations of a large, diversified corporation would diminish the personal quality of such services. We cannot say that the statutory means chosen are not reasonably related to a valid legislative goal.

Blue Hills argues, however, that by tying in cemetery and funeral services, prices to consumers might be reduced. Even assuming this to be true,[9] legislation which furthers goals other than lessening the cost of services is not thereby rendered unconstitutional. Contrary to Blue Hills' further argument, the fact that the original legislation enacting § 87 may have been sponsored by the Massachusetts Funeral Directors Association, Inc., also does not render the statute

---

[9] Blue Hills notes that the Consumer Protection Division of the Attorney General's office has called for the repeal of § 87's "other business" prohibition. Attorney General, Consumer Protection Division, Report on the Massachusetts Funeral Industry, March, 1977. More generally, commentators have argued against the pervasive growth of occupational licensing schemes. See, e.g., Monaghan, The Constitution and Occupational Licensing in Massachusetts, 41 B.U.L. Rev. 157 (1961); Gellhorn, The Abuse of Occupational Licensing, 44 U. Chi. L. Rev. 6 (1976). As these commentators generally recognize, however, the merits of their arguments are properly addressed to the Legislature.

379 Mass. 368                                              375

Blue Hills Cemetery, Inc. *v.* Board of Registration in Embalming & Funeral Directing.

unconstitutional.[10]  *Corning Glass Works* v. *Ann & Hope, Inc.*, 363 Mass. 409, 419 (1973).  *Supreme Malt Prods. Co.* v. *Alcoholic Beverages Control Comm'n*, 334 Mass. 59, 63 (1956).

Finally, Blue Hills contends that the prohibition on corporations engaged in funeral directing pursuing any other business violates State and Federal due process since there exist "less restrictive means" that would be equally capable of advancing any possible legislative objective.  Such analysis, with its implicit assessment of the effectiveness of alternative means, raises an unacceptable danger of this court's substituting its judgment for that of the Legislature; absent a constitutional mandate to do so, "[i]t is not for us to inquire into the expediency or the wisdom of the legislative judgment." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418 (1940).[11]

We conclude that Blue Hills has failed to demonstrate that § 87 violates the substantive due process guaranties of either the State or Federal Constitution.

*Equal protection claims.*  Blue Hills also argues that the distinction drawn by § 87 between those corporations engaged solely in funeral directing and those engaged in other business violates the equal protection clause of the Fourteenth Amendment.

---

[10] Although there is no evidence in the record of legislative history, we may take judicial notice of such history.  See *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 122 (1973).  1936 House Doc. No. 582, a precursor of St. 1936, c. 407, § 3, the legislation which first regulated funeral directing in the Commonwealth, was sponsored by the association.

[11] This is not, of course, to say that the obvious availability of a less arbitrary means of accomplishing a given legislative end has no bearing on our review of a regulatory statute.  Those challenging a statute may properly point to the Legislature's failure to choose such an alternative as part of their proof that the necessary nexus between the actual statutory means and the purported legislative end fails to exist, perhaps because the end itself becomes implausible.  See *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health*, 348 Mass. 414, 424-425 (1965).  But the burden of proving their claim remains squarely on those asserting that such a statute is unconstitutional.

Under the equal protection clause, in the absence of a suspect classification, our role remains "limited to determining whether the classification involved rationally 'furthers a legitimate State interest.'" *Johnson* v. *Martignetti,* 374 Mass. 784, 791 (1978). See *Friedman* v. *Rogers,* 440 U.S. 1, 17 (1979); *Pinnick* v. *Cleary,* 360 Mass. 1, 27-28 (1971). To say that the Legislature has classified all corporations into those engaged solely in the funeral business on the one hand and those not so engaged on the other, and then denied the latter the ability to become licensed funeral directors, represents nothing more than an elaborate rephrasing of the straightforward proposition that a corporation pursuing any other business cannot be licensed as a funeral director. For all the reasons set out, *supra,* therefore, we find this "classification" to be rationally related to legitimate State ends and therefore as valid an exercise of the police power as the substantive prohibition itself.

*Scally's claims.* Plaintiff Scally argues that by virtue of § 87 he has been denied the opportunity to engage in the lawful activity of funeral directing. Scally's connection to § 87, however, is wholly derivative. General Laws c. 112, § 83, whose validity Scally does not challenge, provides in part that the profession of funeral directing must be practiced from a place of business that has received an establishment certificate. Since we have concluded that § 87 validly bars the issuance of such a certificate to Blue Hills, Scally, while free to pursue his chosen calling at any licensed location,[12] may not do so as an employee of Blue Hills Cemetery, Inc.

---

[12] *Scally's presence in this case, furthermore, adds nothing to the merits of Blue Hills'* attempt to become such a licensed location by attacking the constitutionality of § 87. Even if the denial of employment opportunity to an individual were held to require closer judicial scrutiny than the denial of business opportunity to a corporation, Blue Hills could not use Scally's presence to secure this stricter scrutiny of § 87 any more than it could use his presence to obtain stricter scrutiny of, say, a regulation denying issuance of an establishment certificate to any firm with inadequate or unsanitary facilities.

The judgment of the Superior Court, declaring § 87 of G. L. c. 112 constitutional, is affirmed.

*Judgment affirmed.*