ISRAEL FINE *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD.

Suffolk. October 9, 1987. — February 8, 1988.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Equal protection of laws, Retirement. *Retirement.*
*Public Employment*, Retirement.

A State employee classified for retirement purposes under G. L. c. 32,
§ 3 (2) (*g*), in "Group 4," who claimed that his classification was
unlawfully discriminatory in that he was subject to mandatory retirement
at age sixty-five while similarly situated "Group 1" employees were not
required to retire until age seventy, did not sustain his burden of proving
before the Contributory Retirement Appeal Board that his retirement
classification was without rational basis. [642-644]

CIVIL ACTION commenced in the Superior Court Department
on August 20, 1980.

The case was heard by *Elbert Tuttle*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Mark P. Sutliff*, Assistant Attorney General, for Contributory
Retirement Appeal Board.

*Norman A. Erlich* (*Glenn D. Barnes* with him) for the plaintiff.

ABRAMS, J. The Contributory Retirement Appeal Board
(CRAB) appeals from a decision of a judge in the Superior
Court that the plaintiff's classification as a Group 4 employee
subject to retirement at age sixty-five, G. L. c. 32, § 3 (2) (*g*)
(1986 ed.), violates the plaintiff's "constitutional right to equal
protection under the law." The judge ordered the plaintiff's
reassignment to Group 1 of the State employees' retirement
system "with all statutory rights that flow therefrom."[1] We
transferred the case to this court on our own motion. We
reverse.

---

[1] Group 1 employees must retire at age seventy. G. L. c. 32, §§ 1 & 5.

The facts, which are not in dispute, are as follows. The plaintiff, Israel Fine, was born on August 1, 1915. At the time of the hearing, the plaintiff testified that he had been employed by the Registry of Motor Vehicles for twenty-nine years. On July 1, 1979, the plaintiff became a supervising hearing officer for the registry, pursuant to G. L. c. 90, § 29 (1986 ed.). As a supervising hearing officer, the plaintiff conducted hearings; recommended the suspension or revocation of licenses or registrations; revoked or suspended licenses and registrations when necessary; initiated investigations of complaints of motor vehicle law violations; examined motor vehicle operators' records to determine appropriate action; interpreted court decisions; and answered inquiries from law enforcement officials concerning the status of motor vehicle operators. The plaintiff had no police powers and did not perform any hazardous duties.

On October 16, 1979, the State board of retirement notified the plaintiff that he had been placed in Group 4 for retirement purposes. A Group 4 employee must retire on the last day of the month in which he or she attains age sixty-five. The plaintiff knew at the time he was appointed supervising hearing officer that his appointment placed him in Group 4.[2] The plaintiff appealed this classification to CRAB. In 1980, the division of hearings officers conducted a hearing for CRAB. Before the hearing officer issued her decision, the plaintiff filed a complaint in the Superior Court seeking a declaration as to the constitutionality of G. L. c. 32, § 3 (2) (*g*), as applied to him, and an injunction against his involuntary retirement on August 31, 1980. The Superior Court issued the injunction pending the outcome of the plaintiff's appeal. The hearing officer thereafter issued findings and recommended that the plaintiff be classified as a member of Group 4 for retirement purposes, thereby affirming the decision of the board of retirement. CRAB accepted the hearing officer's findings of fact and recommendation.

---

[2] General Laws c. 32, § 3 (2) (*g*), Group 4 includes all employees of the Registry of Motor Vehicles who are appointed pursuant to G. L. c. 90, § 29.

The plaintiff sought judicial review of CRAB's decision in the Superior Court, pursuant to G. L. c. 30A, § 14 (1986 ed.),[3] claiming that his classification as a Group 4 employee deprived him of rights secured by the equal protection clause of the Fourteenth Amendment to the United States Constitution and by art. 10 of the Massachusetts Declaration of Rights.[4] The judge agreed with the plaintiff's claim and ordered the plaintiff's classification as a Group 1 employee subject to mandatory retirement at age seventy.

In analyzing equal protection claims, this court has held that statutes which do not involve either a suspect group or a fundamental right only need be supported by a conceivable, rational basis. *Aronson* v. *Commonwealth, ante* 244, 254 (1987). *Lee* v. *Commissioner of Revenue*, 395 Mass. 527, 529-530 (1985). *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 371 (1979). See *Massachusetts Bd. of Retirement* v. *Murgia*, 427 U.S. 307, 312 (1976); *New Orleans* v. *Dukes*, 427 U.S. 297, 303 (1976). The plaintiff does not claim that his assignment to Group 4 involves a fundamental right or a suspect classification. See *Blue Hills Cemetery, Inc., supra* at 371 n.6. See also *Murgia, supra* at 313. Thus, the retirement classifications enacted in G. L. c. 32, § 3 (2) (*g*), are constitutional unless the plaintiff proves that the statute "cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418 (1940). See *Klein* v. *Catalano*, 386 Mass. 701, 707 (1982). See also *Shell*

---

[3] The plaintiff does not raise any issue concerning the Federal Age Discrimination in Employment Act, although he argued such a claim in his trial brief. Thus, any claim under that statute is waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975); *Commonwealth* v. *Sherman*, 389 Mass. 287, 288 n.1 (1983); *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 407 n.3 (1978). The plaintiff also raised a number of other issues at trial. On appeal, he argues only the equal protection claim. The other issues therefore are deemed waived as well.

[4] The parties do not make any separate argument based on the State constitutional claim, and we therefore do not treat the State constitutional claim separately.

*Oil Co.* v. *Revere*, 383 Mass. 682, 690 (1981); *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423, 432 (1977). The plaintiff has not met his burden.

The plaintiff argues that his classification as a Group 4 employee discriminates among similarly situated employees because the plaintiff's supervisor, the deputy registrar, as well as his immediate subordinates, all are assigned to Group 1 and thereby subject to retirement at age seventy. The plaintiff concedes that, unlike the supervising hearing officers, none of these employees conducts hearings on behalf of the registry. CRAB argues that, while perhaps not physically arduous, the duties of supervising hearing officers demand exacting levels of judgment and other mental capabilities which may decline with age. Assuring the high quality of supervising hearings officers is a legitimate, rational objective. CRAB concludes that the classification therefore has a rational basis. We agree. "A line drawn at [a specified age] eliminates the anguish, time, delay, expense, and embarrassment of the supervision and removal of older [hearing officers] of failing competence . . . ." *Apkin* v. *Treasurer & Receiver Gen.*, ante 427, 435-436 (1988).

Furthermore, CRAB argues that because the risk of disabling illness and death increases with age, mandatory retirement of supervising hearing officers at age sixty-five reduces delays in the administration of hearings at the registry, which might be caused by a supervising hearing officer's incapacity or death. Similarly, CRAB notes that a supervising hearing officer may be entrusted with overseeing a branch of the registry, and that early retirement therefore decreases the possibility that the operations of an entire branch office may be disrupted by the supervising hearing officer's disability or death.[5] The statute has a rational basis, and therefore it is not unconstitutional.[6]

---

[5] Although the plaintiff in this case did not serve as a branch office supervisor, the analysis of a rational basis for the classification remains the same.

[6] CRAB argues that requiring supervising hearing officers' retirement at sixty-five allows the registry to provide training for its younger employees with the possibility of advancement as a motivating force. Such a legislative

The plaintiff asserts his Group 4 classification works invidious discrimination because his position as a supervising hearing officer is similar to that of a judge, and judges in the Commonwealth may serve until age seventy. "It is well settled that 'a State retains broad discretion to classify as long as its classification has a reasonable basis,'" *McCarthy* v. *Sheriff of Suffolk County,* 366 Mass. 779, 786 (1975), quoting *Graham* v. *Richardson,* 403 U.S. 365, 371 (1971), and the fact that the Group 4 designation may be somewhat over-inclusive or under-inclusive or perhaps not entirely coextensive with similar positions is not fatal to an equal protection analysis. See *Murgia, supra* at 316. "A statute or ordinance is not rendered unconstitutional merely because the evidence of record suggests that the 'ultimate efficacy' of achieving the statutory process is in question, or that the means to achieve the statutory end is rough, illogical or not the best available, or that the means stated in the statute is not perfectly consistent with the desired result. The success of the Legislature's choice need not be guaranteed" (footnotes omitted). *Shell Oil Co.* v. *Revere, supra* at 687.

The plaintiff suggests that Group 4 has no coherence. Group 4, in fact, includes a wide array of job descriptions. However, the fact that Group 4 is not entirely homogenous may be the result of an incremental process of legislative definition,[7] which

---

goal is not discriminatory because it does not aim to "reward[ ] youth *qua* youth, but [to] stimulat[e] the highest performance in the ranks of [government service] by assuring that opportunities for promotion would be available . . . . Aiming at superior achievement can hardly be characterized as illegitimate, and it is equally untenable to suggest that providing promotion opportunities . . . through early retirement does not play an acceptable role in the process." *Vance* v. *Bradley,* 440 U.S. 93, 101 (1979).

[7] See, e.g., St. 1968, c. 542, §§ 1, 2 (changing membership classification of national guard employees from Group 2 to Group 4); St. 1968, c. 650, § 2 (placing certain employees of Department of Correction in Group 4); St. 1969, c. 816 (adding correctional "industrial instructor, recreation officer, assistant industrial shop manager, industrial shop manager, assistant to the supervisor of industries, supervisor of industries" to Group 4); St. 1970, c. 662, §§ 1, 2, and St. 1973, c. 947 (reclassifying municipal gas or electric generating or distribution plant employees from Group 2 to Group 4); St. 1971, c. 992, §§ 1, 2 (reclassifying State police detectives, Metropolitan District Commission police, and permanent crash crewmen, fire control men, and assistant fire control men employed by the Massachu-

does not, in this case, offend against equal protection principles. "States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step . . . in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the. evil to future regulations" (citation omitted). *New Orleans* v. *Dukes, supra* at 303.

Accordingly, we conclude that the classification of the plaintiff as a Group 4 employee for retirement purposes is supported by a plausible, rational basis, and does not violate the plaintiff's rights to equal protection of the laws as guaranteed by the United States Constitution and by the Massachusetts Declaration of Rights. The judgment is reversed and this matter is remanded to the Superior Court for entry of a judgment affirming the decision of CRAB.

*So ordered.*

setts Port Authority at General Edward Lawrence Logan International Airport from Group 2 to Group 4); St. 1971, c. 1012, § 18 (adding Massachusetts Bay Transportation Authority police to Group 4); St. 1972, c. 809, § 2, and St. 1981, c. 760, § 9 (adding division of law enforcement of the current Department of Fisheries, Wildlife, and Recreational Vehicles and officials and employees of Registry of Motor Vehicles appointed by the registrar under c. 90, § 29); St. 1973, c. 609 (inserting "supervising identification agent and employees who hold the position of state hospital steward in department of correction"); St. 1973, c. 987 (reclassifying capitol police from Group 2 to Group 4); St. 1973, c. 1083 and St. 1979, c. 485, §§ 1, 2 (reclassifying "the sheriff, superintendent, deputy superintendent, assistant deputy superintendent, and correction officers of county correctional facilities" from Group 2 to Group 4); St. 1973, c. 1222 (reclassifying chief and district fire wardens in Department of Natural Resources from Group 2 to Group 4); St. 1978, c. 442, § 14 (adding chief of security for University of Massachusetts Medical School to Group 4); St. 1983, c. 613 (inserting "employees of the parole board who hold the position of parole officer or parole supervisor" to Group 4).