RETIREMENT BOARD OF TAUNTON *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD & another.[1] No. 01-P-267. November 12, 2002. *Retirement. Public Employment,* Retirement. *Administrative Law,* Agency's interpretation of statute. *Contributory Retirement Appeal Board. Public Officer.*

The Retirement Board of Taunton (RBT) appeals from a decision of the Superior Court, which affirmed a decision of the Contributory Retirement Appeal Board (CRAB) granting Joseph Blain's request for Group 4 retirement status under G. L. c. 32, § 3(2)(*g*). We likewise affirm.

Blain has served as manager of the Taunton municipal lighting plant (plant) since 1978. As manager, he has over-all responsibility for the operation of the plant, see G. L. c. 164, § 56, and supervises persons who directly supervise Group 4 employees. In 1998, Blain requested that the RBT classify him as a Group 4 employee for retirement purposes. G. L. c. 32, § 3(2). Blain was at that time classified as a Group 1 employee, which meant that he was eligible for less generous retirement benefits. The RBT denied Blain's request. Blain appealed that decision to the Division of Administrative Law Appeals (DALA), which reversed the decision of the RBT and ruled that Blain was entitled to Group 4 classification. Incorporating the DALA magistrate's decision and findings of fact, CRAB reached the same conclusion, granting Blain Group 4 status. The RBT petitioned for judicial review pursuant to G. L. c. 30A, § 14, and a judge of the Superior Court affirmed CRAB's decision.

The RBT relies on this court's decision in *Gaw* v. *Contributory Retirement Appeal Bd.*, 4 Mass. App. Ct. 250 (1976). In *Gaw*, a municipal light plant manager sought Group 4 status based on language then included in G. L. c. 32, § 3(2), that provided Group 4 status for "employees of a municipal gas or electric plant who are employed as linemen, electric switchboard operators, electric maintenance men, steam engineers, boiler operators, firemen, oilers, mechanical maintenance men and supervisors of said employees." Interpreting this provision, this court declared:

> "[W]e believe that the Legislature intended the clause in question to refer only to the *immediate* supervisors of linemen and the like. An intention to exclude managers from the scope of the word 'supervisors' may, at least in the case of most electric light departments, be inferred from the use of the phrase '*employees* of a municipal . . . electric plant' to describe the class of persons covered. That phrase is at best inappropriate to describe the manager of an entire plant whose functions include the hiring of its employees. . . . Such an inference is also

---

[1]Joseph Blain, intervener.

justified by the omission of the word 'manager' from the recitation of those included as employees. The manager of a municipal electric plant is a public officer . . . whose position is created by statute . . . , and the Legislature, which is presumed to have been aware of those facts, could be expected to have made specific reference to the position if its inclusion had been intended." (Emphasis in original; citations omitted.)

*Id.* at 257. In 1993, however, the Legislature amended G. L. c. 32, § 3(2)(*g*), to provide that Group 4 supervisors "shall include managers and assistant managers" of Group 4 employees. St. 1993, c. 139.

In its interpretation of the amended language, CRAB concluded that Blain "is clearly within the statutory designation as a Group 4 employee." An administrative agency's interpretation of a statute within its purview is accorded weight and deference because of the agency's experience, technical competence, and specialized knowledge. *Massachusetts Med. Soc.* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988). *Flint* v. *Commissioner of Pub. Welfare*, 412 Mass. 416, 420 (1992). *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 (1996). Retirement law, especially, may be "notoriously complex, and, in construing the effect of the provision in question, the court would hope to have the benefit of the experience of the appeal board." *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 463 (1985). Here, CRAB's interpretation of G. L. c. 32, § 3(2)(*g*), is reasonable and is consistent with CRAB's past reading of the text of the statute. See *Rucker* v. *Reading Retirement Bd.*, CRAB Docket No. CR-95-853 (May 20, 1998).

The RBT argues that Blain should not be included in Group 4 because he does not directly supervise Group 4 employees. The addition of the phrase "who shall include managers and assistant managers" to G. L. c. 32, § 3(2)(*g*), after the word "supervisor of said employees" indicates the Legislature's intent to include managers in Group 4, even when they only supervise the supervisors of Group 4 employees. Moreover, as this court previously recognized in *Gaw*, the Legislature was well aware of the meaning of the term "manager" in the context of municipal gas and electric plants, as it had statutorily defined the position and its responsibilities in G. L. c. 164, § 56. By adding the term "manager" in the 1993 amendment, the Legislature signaled its intent no longer to exclude from Group 4 managers as so defined in G. L. c. 164, § 56.

The RBT also argues that Group 4 is limited to those employees who regularly engage in hazardous activities in the course of their employment. General Laws c. 32, § 3(2), does not by its terms impose a hazardous duty requirement for classification in Group 4. As this court in *Gaw* stated, the House "bill on which it was based, as originally filed, applied to 'employees of a municipal gas and electric plant who are engaged in work of a dangerous nature.' . . . Had the clause been enacted in that form, the interpretation urged by the plaintiff would have much to support it. But the original formulation was rejected by the Senate, where the present wording, including the insertion of the phrase 'employed as,' was adopted as a floor amendment." *Gaw* v. *Contributory Retirement Appeal Bd.*, 4 Mass. App. Ct. at 256. Finally, CRAB, the expert agency charged with the interpretation of the statute, has

emphasized that "[u]nlike other provisions of G. L. c. 32, § 3(2)(g), assistant managers are classified in Group 4 by virtue of the position that they hold and not as the result of duties performed."[2] We conclude, as CRAB implicitly did, that this is true for managers as well as assistant managers.

The judge correctly upheld CRAB's decision.

*Judgment affirmed.*

*Michael Sacco* for the plaintiff.

*Christopher O. Quaye,* Assistant Attorney General, for the defendant.

*Alan K. Posner* for the intervener.

---

[2]Although the Legislature may have originally intended Group 4 to include only those employees with hazardous jobs, see St. 1967, c. 826, § 3 (adding Group 4), that is no longer the case. "[T]he fact that Group 4 is not entirely homogenous may be the result of an incremental process of legislative definition." *Fine* v. *Contributory Retirement Appeal Bd.,* 401 Mass. 639, 643 (1988).

